**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHARON RANSOM,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PECO ENERGY COMPANY,**<br><br>**and**<br><br>**EXELON CORPORATION,**<br><br>**Defendants.** | **CIVIL ACTION NO. __________**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

Plaintiff Sharon Ransom, by and through her attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint"):

## PRELIMINARY STATEMENT

1. This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff Sharon Ransom ("Ms. Ransom"), a former employee of PECO Energy Company ("PECO") and Exelon Corporation ("Exelon" and collectively with PECO "Defendants"). Despite her loyalty and consistent performance, Ms. Ransom has been harmed by Defendants' harassment and discrimination on the basis of her age and disabilities or perceived disabilities, retaliation for seeking accommodation of her disabilities, and retaliation for complaining about discrimination and harassment, culminating in her wrongful termination on January 20, 2026. Defendants also failed to engage in a good-faith, interactive process with

respect to accommodating Ms. Ransom's disabilities, in violation of state and federal law, as set forth herein.

2. This action is filed pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA").

## JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On July 17, 2026, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On August 12, 2026, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice.[1]

---

[1] It has been less than one year since Plaintiff dual-filed her Charge of Discrimination as a Complaint with the PHRC. Plaintiff will seek to amend her Complaint in this matter once it has been greater than one year since her dual-filing and she has exhausted her administrative remedy with respect to her claims brought pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").

## VENUE

7. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8. This action properly lies in the Eastern District of Pennsylvania because the claims and significant activities associated with those claims arose in this judicial district, and Plaintiff was employed by Defendants in this judicial district.

## PARTIES

9. Plaintiff Sharon Ransom is an adult female citizen and resident of Plainfield, Illinois and the United States of America. At the time of her employment with Defendants, Ms. Ransom was a resident of Philadelphia, Pennsylvania.

10. Ms. Ransom is fifty-eight (58) years old and within the class of individuals protected against discrimination by the ADEA.

11. Ms. Ransom is a qualified individual with disabilities within the meaning of the ADA.

12. Ms. Ransom has suffered from hearing loss, an auto-immune disorder, and limitations in the use of her right hand for a period far in excess of six months.

13. Ms. Ransom's disabilities affect a major bodily function and substantially limit one or more major life activities.

14. Defendant PECO Energy Company is a Pennsylvania energy company with a corporate headquarters and place of business located at 2301 Market Street, Philadelphia Pennsylvania 19103, where Plaintiff was employed

15. Defendant Exelon Corporation ("PECO") is a Pennsylvania company with a corporate headquarters and principal place of business located at 10 S. Dearborn Street, 52nd

Floor, Chicago, Illinois 60603, and an address at 2301 Market Street, Philadelphia Pennsylvania 19103, where Plaintiff was employed.

16. During her employment, Defendants regarded Ms. Ransom as disabled.

17. At all relevant times, Defendants each are and have been employers employing more than five hundred (500) employees.

18. Defendants do significant business within the Commonwealth of Pennsylvania.

19. At all relevant times, employees of Defendants acted as agents and servants for Defendants.

20. At all relevant times, employees of Defendants were acting within the scope of their authority and in the course of employment under the direct control of Defendants.

21. At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

22. At all times relevant hereto, Defendants each are and have been an "employer" and/or "person" within the meaning of the laws at issue in this matter and are accordingly subject to the provisions of said laws.

23. At all relevant times hereto, Plaintiff Sharon Ransom was an "employee" within the meaning of the laws at issue in this matter and is accordingly entitled to the protections of said laws.

24. This Honorable Court has jurisdiction over Defendants.

## FACTS

25. Beginning in or about January 2023, Ms. Ransom was employed by Defendants as an Associate Cost Analyst.

26. Throughout her employment with Defendants, Ms. Ransom was a diligent employee who performed her duties in a satisfactory and professional manner.

27. Despite her loyalty and consistent performance, Ms. Ransom was discriminated against and harassed on the basis of her age and disabilities and/or perceived disabilities, was retaliated against for seeking accommodation of her disabilities, and was retaliated against for complaining about discrimination and harassment, culminating in her wrongful termination on January 20, 2026.

28. Defendants also failed to engage in a good-faith, interactive process with respect to accommodating Ms. Ransom's disability.

29. Ms. Ransom has severe hearing loss – a disability.

30. Ms. Ransom utilizes a hearing aid to assist her with this condition.

31. Defendants were aware of this disability, as Ms. Ransom disclosed this during her interview to the hiring manager.

32. Since the beginning of her employment with Defendants, Ms. Ransom's supervisor, Tara Lee, subjected her to differential and discriminatory treatment due to her disabilities.

33. Ms. Lee was continuously hostile to Ms. Ransom, making demeaning and discriminatory comments, unnecessarily chastising Ms. Ransom, and engaging in angry outbursts directed at Ms. Ransom in front of her colleagues.

34. On one occasion, Ms. Lee sat behind Mr. Ransom and began making noise and banging drawers loudly to test her hearing.

35. Ms. Lee kept Ms. Ransom from speaking with the rest of the team, and would often remark during meetings that Ms. Ransom did not need to be there, causing Ms. Ransom to feel isolated.

36. On March 29, 2024, Ms. Ransom suffered a sudden loss of use in her right, dominant hand.

37. She went to the emergency room, and X-rays revealed a bone fragment in her hand.

38. On May 9, 2024, Ms. Ransom was required to have surgery to address this condition.

39. During the surgery, it was further determined that Ms. Ransom had several bone spurs in her right hand.

40. Ms. Ransom additionally has an auto-immune disease.

41. As a result, her condition created complications that significantly delayed her healing from the surgery on her hand, and she was ultimately anticipating to have a second surgery.

42. These medical complications caused Ms. Ransom to be required to be on leave from work for an extended period as a result of her disabilities.

43. Ms. Ransom applied for FMLA leave, but it was denied. Instead, PECO granted Ms. Ransom unpaid medical leave.

44. Despite the surgeries, Ms. Ransom continues to have limitations in the use of her hand, including an inability to type or write with her right hand, causing her to have a disability.

45. Defendants' management, including her supervisor Tara Lee, were aware of this disability and treated Ms. Ransom in a discriminatory and differential manner as a result.

46. On June 17, 2025, Ms. Ransom returned to work from her extended medical leave.

47. She immediately experienced extensive issues, both with her work equipment and her supervisor, Tara Lee.

48. When Ms. Ransom returned to work, Ms. Lee indicated that she had been running the department just fine without her.

49. Despite having knowledge of her return, Ms. Lee failed to take steps to ensure Ms. Ransom had the necessary access, systems or tools in order to perform her work functions.

50. Ms. Ransom's work computer had remained unused during her medical leave and had not been updated.

51. Ms. Ransom reached out to the IT department to reset her password, however she was unable to do so because Ms. Lee had not added her to the company network.

52. Ms. Ransom was unable to reset her password for two days due to this issue.

53. Ms. Lee still failed to add Ms. Ransom back to the network, but with the help of the IT department, Ms. Ransom was able to reset her password and access her email.

54. Ms. Lee had stated that Ms. Ransom was required to complete HR orientation classes within 48 hours of her return, however Ms. Ransom did not have access to the system for the entire first week of her return, and was forced to complete the classes over the weekend.

55. On June 23, 2025, Ms. Ransom attempted to join a required meeting held on Microsoft Teams, but received an error message stating she did not have permission to join.

56. The next day, Frank Battilana, who had been hosting the meeting, told Ms. Ransom that she had been unable to join the meeting because Ms. Lee still had not added her to the network.

57. The week of July 4, 2025, two weeks after she had returned to work, Ms. Ransom was still not in the network, which caused her to not receive her scheduled paycheck.

58. Ms. Ransom was forced to pay for her healthcare and 401k premiums out of pocket.

59. When Ms. Ransom informed Ms. Lee of his via email, Ms. Lee did not respond.

60. Ms. Lee continued to fail to add Ms. Ransom to the company network for months after her return from medical leave, and continued to fail to grant her the access, systems, and applications required to perform her job functions.

61. Throughout July and August 2025, Ms. Ransom continued to experience technical issues and malfunctions with her computer and work equipment.

62. Ms. Ransom's work computer and necessary applications consistently malfunctioned and did not work properly.

63. Ms. Ransom reported these issues to Ms. Lee multiple times, but nothing was done to address the problem.

64. Specifically, Ms. Ransom continuously experienced issues with Microsoft applications, especially Microsoft Temas, which was not working properly.

65. During meetings, Ms. Ransom experienced ongoing issues with the sound and microphone not functioning.

66. Because the sound during meetings was not functioning on her work computer, Ms. Ransom would log in to Teams meetings using her cell phone.

67. Ms. Ransom's hearing aids are connected to her cell phone via Bluetooth.

68. Due to Ms. Ransom's hearing loss, she also often used transcription during meetings, and had done so since the start of her employment with Defendants.

69. Ms. Ransom attended scheduled training meetings with a Senior Analyst on Microsoft Teams, and the meetings were recorded so that Ms. Ransom could later make job aids with step-by-step instructions based on the information.

70. During one such recorded meeting, Ms. Ransom's colleagues were having a loud, informal conversation nearby, which was picked up by her hearing aid microphone and inadvertently recorded.

71. After that incident, Ms. Ransom's microphone in Microsoft Teams was disabled and no longer functional.

72. Due to this discriminatory treatment, Ms. Ransom was unable to participate in future Microsoft Teams meetings by speaking, and was forced to only type in the chat.

73. Ms. Ransom's peers without hearing aids were not excluded in this way or subjected to this limitation, making it clear that Ms. Ransom was treated differently due to her disability.

74. Following this incident, Ms. Ransom emailed Christopher Smith, HR Representative, and requested a meeting regarding her need for accommodations.

75. Mr. Smith responded by telling Ms. Ransom to instead speak with the Nurse Case Manager, Cherval Basset.

76. Ms. Ransom reached out to Ms. Basset via email requesting accommodations, specifically headphones that would allow her to switch off the microphone, as well as a vertical mouse.

77. Ms. Ransom did not receive any response to her request.

78. Ms. Ransom additionally reached out to the office administrator, Mary (LNU), again requesting headphones and a bigger mouse. That request also remained unaddressed.

79. Ms. Ransom sought to meet with Mr. Smith in early September 2025 on multiple occasions, but the meetings never happened, making it clear that her requests were not taken seriously.

80. Following her return from medical leave, Ms. Ransom experienced continuing issues with both Microsoft Word and Excel, often with the applications failing to save her information properly.

81. This created serious ongoing issues with her functionality at work, and Ms. Ransom spent extensive time in contact with the IT Help Desk trying to remedy the problem.

82. Ms. Ransom was frequently required to work with data in Microsoft Excel. One of her duties was generating and sending out a weekly report which involved compiling large amount of data in Microsoft Excel from multiple programs and applications.

83. Ms. Ransom began to experience issues running these reports due to the Excel application malfunctioning.

84. Ms. Ransom had previously executed this report without any issues before her extended medical leave. She had, in fact, created a step-by-step job aid for completing this task.

85. On August 15, 2025, the construction team who received the weekly report from Ms. Ransom reported that they were missing contract numbers and rows of data in the Excel workbook that Ms. Ransom had generated for both August 8 and August 15.

86. While investigating why the information was missing, Ms. Ransom discovered that during her time out of the office for medical leave, the construction team had been attempting to automate the report. Her supervisor, Ms. Lee, was aware of this and had wanted to add their team's projects to the automated report.

87. Tara Ogden, a Business Analyst on the construction team, informed Ms. Ransom that adding their department information to the automated report had caused it to malfunction.

88. Ms. Lee denied having any knowledge of this, and instead blamed Ms. Ransom for the malfunction.

89. Ms. Lee called Ms. Ransom into her office and said she "did not know how to help" her, and was "tired of force feeding" her.

90. Ms. Lee asked Ms. Ransom if she had thought about any jobs she could apply for, and asked if she was leaving PECO.

91. A Senior Analyst who had been helping with retraining Ms. Ransom had also missed contract numbers in the report for the projects he managed, but was not subject to similar treatment, making it clear that Ms. Ransom was treated differently than her peers.

92. On August 27, 2025, at a group meeting involving the Financial and Contract Management departments, Ms. Ransom volunteered to create presentation materials for the meeting.

93. Ms. Ransom created the slide deck and emailed it to the group ahead of the presentation.

94. During the meeting, Ms. Lee asked Ms. Ransom to take notes, even though an intern was already assigned to take notes.

95. Another intern ran the slide presentation.

96. During the presentation, a manager Alan Yun suddenly stated that it was the wrong slide.

97. Ms. Lee then aggressively pointed her finger at Ms. Ransom and yelled loudly at her about it being the wrong slide.

98. Ms. Lee belittled and singled out Ms. Ransom without basis, in front of Ms. Ransom's peers and colleagues, causing extreme embarrassment and distress.

99. Ms. Lee did not subject younger individuals who did not have known disabilities to similar treatment.

100. After this incident, Ms. Ransom requested that an IT technician physically come to her office to inspect and diagnose her laptop, in an attempt to rectify the issues she was experiencing.

101. At the request of the IT technician, Ms. Ransom checked with new hires to see if the applications were working properly for them. She found that it was running smoothly on their computers with no issues.

102. Following her return from medical leave, Ms. Ransom continuously requested assistance and support in addressing the functionality of her work equipment, including her computer. These issues continued to remain unaddressed, leaving Ms. Ransom with nonfunctioning equipment.

103. Meanwhile other significantly younger, non-disabled employees, including new hires, had full functionality with no issues. This differential treatment following Ms. Ransom's medical leave was clearly discriminatory.

104. Due to the differential and discriminatory treatment, Ms. Ransom reached out to Charles Maronski, Senior Manager, and reported Ms. Lee's discriminatory, harassing and retaliatory conduct.

105. No actions were taken to address the behavior.

106. Mr. Maronski later checked in with Ms. Ransom, to ask if the situation had improved. Ms. Ransom explicitly told him that it had not improved.

107. Defendants failed to take any actions to address Ms. Ransom's concerns.

108. On October 1, 2025, Ms. Ransom was placed on a Performance Improvement Plan (PIP).

109. The PIP goals revolved around the use of Microsoft applications, which Ms. Ransom had reported as malfunctioning for months without receiving any assistance.

110. On January 20, 2026, Ms. Ransom was terminated for the stated reason that she had not met the unrealistic PIP goals and the "required improvement was not achieved."

111. Given her treatment during her employment with Defendants, and the circumstances surrounding her employment and her termination, Ms. Ransom maintains that she was discriminated against and harassed on the basis of her age and her disabilities and/or perceived disabilities, that she was retaliated against for complaining about discrimination and harassment, that she was retaliated against for seeking accommodation of her disability, that Defendant failed to engage in the interactive process with respect to accommodating her disabilities in violation of state and federal laws, and that her termination was a result of discrimination and retaliation in violation of state and federal laws.

112. Based on the foregoing, Ms. Ransom was subjected to discrimination and harassment on the basis of her age and disabilities and/or perceived disabilities and was retaliated against for complaining about discrimination and harassment and for requesting reasonable accommodation for her disabilities, in violation of the ADEA and ADA.

113. Ms. Ransom has suffered mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendants.

114. Defendants and their agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Ms. Ransom severe emotional distress.

115. Defendants willfully violated the ADEA and ADA, as Defendants knew that their actions violated the statutes and/or acted with reckless disregard as to whether their actions violated the ADEA and ADA.

116. Ms. Ransom has suffered financial losses, which include, among other things, lost wages, and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendants.

**COUNT I**
**Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.**

117. Plaintiff Sharon Ransom repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

118. Based on the foregoing, Defendants have engaged in unlawful employment practices in violation of the ADEA.

119. Plaintiff is, and was at the time of her termination, over forty years of age, and was an individual within the class protected by the Age Discrimination in Employment Act.

120. In discriminating against and harassing Ms. Ransom because of her age, and in retaliating against Ms. Ransom, Defendants violated the Age Discrimination in Employment Act.

121. Defendants' violations were intentional and willful.

122. Defendants' willful violations of the ADEA warrant an award of liquidated damages.

123. As the direct and proximate result of Defendants' violation of the Age Discrimination in Employment Act, Plaintiff Sharon Ransom has sustained loss of earnings,

severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

**COUNT II**
**The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA")**

124. Plaintiff Sharon Ransom repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

125. Based on the foregoing, Defendants engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

126. In discriminating against and harassing Ms. Ransom on the basis of her disabilities, and/or because Defendants regarded Ms. Ransom as disabled, in failing and refusing to engage in a good faith, interactive process with respect to accommodating Ms. Ransom's disability, and in retaliating against Ms. Ransom, Defendants violated the ADA.

127. Said violations were intentional and willful.

128. Said violations warrant the imposition of punitive damages.

129. As the direct and proximate result of Defendants' violation of the Americans with Disabilities Act, Plaintiff Sharon Ransom has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

**PRAYER FOR RELIEF**

130. Plaintiff Sharon Ransom repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Sharon Ransom respectfully requests that this Court enter judgment in her favor and against Defendants and Order:

a. Appropriate equitable relief including reinstatement or front pay;

b. Defendants to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment and retaliation;

c. Defendants to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of Defendants' unlawful conduct;

d. Defendants to pay Plaintiff punitive damages;

e. Defendants to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f. Defendants to pay Plaintiff's costs of bringing this action and her attorneys' fees;

g. Plaintiff be granted any and all other remedies available pursuant to the ADEA and ADA; and

h. Such other and further relief as is deemed just and proper.

**JURY DEMAND**

Plaintiff Sharon Ransom hereby demands trial by jury as to all issues so triable.

By: */s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
Bell & Bell LLP
1617 John F. Kennedy Boulevard
Suite 1254
Philadelphia, PA 19103
(215) 569-2500

*Attorneys for Plaintiff Sharon Ransom*

Dated: November 9, 2026